IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


TIM HUNT,                                    07-CV-764-BR

          Plaintiff,                         OPINION AND ORDER

v.

MICHAEL ASTRUE, Commissioner
of Social Security,

          Defendant.


TIM D. WILBORN
19093 S. Beavercreek Road
PMB #314
Oregon City, OR 97045
(503) 632-1120

          Attorney for Plaintiff

KARIN J. IMMERGUT
United States Attorney
BRITANNIA I. HOBBS
Assistant United States Attorney
1000 S.W. Third Ave., Suite 600
Portland, OR 97204-2902
(503) 727-1158

1 - OPINION AND ORDER

**MICHAEL McGAUGHRAN**
Office of the General Counsel
**DAVID R. JOHNSON**
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, WA 98104-7075
(206) 615-2113

      Attorneys for Defendant


**BROWN, Judge.**

      Plaintiff Tim Hunt seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which he denied Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act.  Plaintiff seeks an order reversing the decision of the Commissioner and remanding this action for an award of benefits.

      This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  Following a review of the record, the Court reverses the decision of the Commissioner and remands this matter pursuant to sentence four of 42 U.S.C. § 405(g) for the calculation and award of benefits the decision of the Commissioner.


## ADMINISTRATIVE HISTORY

      Plaintiff filed an application for DIB on August 20, 1999,

2 - OPINION AND ORDER

alleging a disability onset date of March 1, 1997.  Tr. 121-23.[1]
The application was denied initially and on reconsideration.
Tr. 77-78.  An Administrative Law Judge (ALJ) held a hearing on
October 10, 2000, and a continuation hearing on February 8, 2001.
At the hearings, Plaintiff was represented by an attorney.
Plaintiff and a lay witness testified at the October 10, 2000,
hearing.  Tr. 28-62.  Plaintiff and a vocational expert (VE)
testified at the February 8, 2001, continuation hearing.  Tr. 63-
76.

     The ALJ issued a decision on March 29, 2001, in which he
found Plaintiff was not disabled.  Tr. 20-27.  On February 12,
2003, the Appeals Council denied Plaintiff's request for review,
and the ALJ's decision became the final decision of the
Commissioner.  Tr. 6-7.  On March 24, 2003, Plaintiff sought
judicial review by this Court of the Commissioner's decision.  On
February 2, 2004, the Honorable Janice M. Stewart issued an
Opinion and Order reversing and remanding the ALJ's decision for
further administrative proceedings as to "questions of
[Plaintiff's] credibility and the transferability of acquired
skills."

     On January 11, 2005, an ALJ held a hearing on remand.  At
the hearing, Plaintiff was represented by an attorney.  Tr. 540.

---

     [1] Citations to the official transcript of record filed by
the Commissioner on September 25, 2007, are referred to as "Tr."

3 - OPINION AND ORDER

Plaintiff and a VE testified at the hearing.  Tr. 540-73.  On April 13, 2006, the ALJ issued a decision in which he again found Plaintiff was not disabled.  Tr. 460-68.  Pursuant to 20 C.F.R. § 404.984(d), the ALJ's decision became the final decision of the Commissioner.  On June 15, 2005, Plaintiff again sought review of the Commissioner's decision.

On July 7, 2006, the Honorable Ancer L. Haggerty issued an Order reversing and remanding the ALJ's decision for further administrative proceedings pursuant to stipulation of the parties.  Tr. 589-90.  The Court directed the ALJ to

> secure medical evidence regarding the nature,
> severity, and limiting effects of Plaintiff's
> musculoskeletal impairments; reevaluate whether
> Plaintiff meets or equals a Listing.  If
> necessary, the ALJ will also reevaluate the nature
> of the specific past relevant work Plaintiff
> performed, obtain additional vocational expert
> testimony, and reevaluate whether Plaintiff could
> return to this or other work.  Additionally, the
> ALJ will perform any further development and
> conduct any further proceedings deemed necessary.
> The ALJ and Plaintiff may also raise and pursue
> additional issues.

Tr. 589.

On January 29, 2007, the ALJ held a hearing on remand.  Tr. 730-41.  At the hearing, Plaintiff was represented by an attorney.  A medical expert and a VE testified.  On March 15, 2007, the ALJ issued a decision in which he found Plaintiff was not disabled before his June 30, 2003, date last insured.  Pursuant to 20 C.F.R. § 404.984(d), the ALJ's decision became the

4 - OPINION AND ORDER

final decision of the Commissioner.  On May 23, 2007, Plaintiff
again sought review by this Court of the Commissioner's decision.


## BACKGROUND

Plaintiff was born on November 20, 1953; was 49 years old on
June 30, 2003, the date his insured status expired;[2] and was 53
years old at the time of the last hearing.  Tr. 430, 760.
Plaintiff has a two-year Associates Degree in vocational
education.  Tr. 132.  Plaintiff has past relevant work experience
as a community-college teacher.  Tr. 48.

Plaintiff alleges disability due to degenerative disc
disease of the cervical spine, neck fusion, the effects of left
knee and left shoulder reconstructive surgery, and issues with
his left foot resulting from an artificial joint and recon-
structive surgery.  Tr. 126.

The ALJ acknowledged in his March 15, 2007, decision that
Plaintiff has a severe combination of impairments including
degenerative disc disease and "left foot status post fusion."
Tr. 579.  The ALJ, however, concluded the effects of Plaintiff's
left knee and left shoulder reconstructive surgeries were not
severe.  Tr. 580-81.

The ALJ denied benefits to Plaintiff on the ground that

---

[2] Plaintiff is ineligible for DIB before August 20, 1998,
which is twelve months before Plaintiff filed his application for
DIB.  20 C.F.R. § 404.621.

5 - OPINION AND ORDER

Plaintiff has the residual functional capacity (RFC) to perform his past relevant work as a community-college teacher as that position is generally performed in the national economy through Plaintiff's date last insured.  Tr. 583.

Except when noted, Plaintiff does not challenge the ALJ's summary of the medical evidence on the second remand.  After carefully reviewing the medical records, this Court adopts the ALJ's summary of the medical evidence on second remand.  *See* Tr. 580-81.


## STANDARDS

The initial burden of proof rests on the claimant to establish disability.  *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005).  To meet this burden, a claimant must demonstrate his inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  The Commissioner bears the burden of developing the record.  *Reed v. Massanari*, 270 F.3d 838, 841 (9th Cir. 2001).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole.

6 - OPINION AND ORDER

42 U.S.C. § 405(g).  *See also Batson*, 359 F.3d at 1193.
"Substantial evidence means more than a mere scintilla, but
less than a preponderance, i.e., such relevant evidence as a
reasonable mind might accept as adequate to support a
conclusion." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th
Cir. 2006)(internal quotations omitted).

The ALJ is responsible for determining credibility,
resolving conflicts in the medical evidence, and resolving
ambiguities.  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir.
2001).  The court must weigh all of the evidence whether it
supports or detracts from the Commissioner's decision.  *Robbins,*
466 F.3d at 882.  The Commissioner's decision must be upheld even
if the evidence is susceptible to more than one rational
interpretation.  *Webb v. Barnhart*, 433 F.3d 683, 689 (9th Cir.
2005).  The court may not substitute its judgment for that of the
Commissioner.  *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir.
2006).


## DISABILITY ANALYSIS

The Commissioner has developed a five-step sequential
inquiry to determine whether a claimant is disabled within the
meaning of the Act.  *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir.
2007).  *See also* 20 C.F.R. § 404.1520.  Each step is potentially
dispositive.

In Step One, the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006). *See also* 20 C.F.R. § 404.1520(a)(4)(I).

In Step Two, the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. § 404.1520(a)(4)(ii).

In Step Three, the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. § 404.1520(a)(4)(iii). The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, he must assess the claimant's RFC. The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations. 20 C.F.R. § 404.1520(e). *See also* Soc. Sec. Ruling (SSR) 96-8p. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule." SSR

8 - OPINION AND ORDER

96-8p, at *1.  In other words, the Social Security Act does not require complete incapacity to be disabled.  *Smolen v. Chater*, 80 F.3d 1273, 1284 n.7 (9th Cir. 1996).  The assessment of a claimant's RFC is at the heart of Steps Four and Five of the sequential analysis engaged in by the ALJ when determining whether a claimant can still work despite severe medical impairments.  An improper evaluation of the claimant's ability to perform specific work-related functions "could make the difference between a finding of 'disabled' and 'not disabled.'" SSR 96-8p, at *4.

In Step Four, the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work he has done in the past.  *Stout*, 454 F.3d at 1052.  *See also* 20 C.F.R. § 404.1520(a)(4)(iv).

If the Commissioner reaches Step Five, he must determine whether the claimant is able to do any other work that exists in the national economy.  *Stout*, 454 F.3d at 1052.  *See also* 20 C.F.R. § 404.1520(a)(4)(v).  Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can do.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2.  If the Commissioner

9 - OPINION AND ORDER

meets this burden, the claimant is not disabled.  20 C.F.R.
§ 404.1520(g)(1).


## **ALJ'S FINDINGS**

At Step One, the ALJ found Plaintiff did not engage in
substantial gainful activity from March 1, 1997, through June 30,
2003, the date on which his disability insured status expired.
Tr. 579.

At Step Two, the ALJ found Plaintiff has a severe
combination of impairments, including degenerative disc disease
and "left foot status post fusion."  Tr. 579.

At Step Three, the ALJ concluded Plaintiff's impairments do
not meet or equal the criteria for any Listed Impairment set out
in 20 C.F.R. part 404, subpart P, appendix 1.  Addressing the
District Court's direction to review whether Plaintiff's
musculoskeletal impairments meet or equal a Medical Listing, the
ALJ noted the medical expert testified at the January 29, 2007,
hearing that Plaintiff's impairments did not meet or equal the
applicable Listings because a "major peripheral joint . . . does
not include the foot" and the record reflects Plaintiff's major
impairment was of his left foot rather than his left knee.
Tr. 580.  The ALJ adopted the reasoning of the medical expert.
In addition, the ALJ concluded the medical findings as to
Plaintiff's do not support a meet or equal Listing determination"

because Plaintiff was "able to carry on his regular activities of
daily living despite back pain."  Tr. 581-82.  The ALJ assessed
Plaintiff's RFC through his date last insured and found Plaintiff
was able to lift 20 pounds occasionally and 10 pounds frequently;
stand or walk for six out of eight hours per day; and sit for two
hours out of an eight-hour day.  Tr. 582.  The ALJ limited
Plaintiff to "maximum sitting at one time [of] 45 minutes and
maximum standing or walking at one time [of] 30 minutes."  Tr.
582.  The ALJ found Plaintiff was precluded from work that
required hyperextension of his cervical spine and head; reaching
overhead with his left arm; walking or standing on uneven
surfaces; climbing; and anything other than limited stooping,
crouching, and crawling.  Tr. 582.

     At Step Four, the ALJ found Plaintiff was able to perform
his past relevant work as a community-college teacher as that
position is generally performed in the national economy through
his date last insured.  Tr. 583.  Accordingly, the ALJ concluded
Plaintiff was not disabled as of June 30, 2003, his last date
insured and, therefore, is not entitled to benefits.  Tr. 584.


                          **DISCUSSION**

     Plaintiff contends the ALJ erred when he (1) found at
Step Three that Plaintiff's impairments do not meet or equal a
Listed impairment; (2) found Plaintiff could perform his past

11 - OPINION AND ORDER

relevant work as a community-college teacher as it is generally
performed in the national economy; (3) improperly rejected
Plaintiff's testimony; (4) improperly rejected lay-witness
testimony; (5) improperly rejected the opinions of Plaintiff's
treating physicians Charles M. Hickman, M.D., and Thomas R.
Palmer, M.D.; and (6) posed an incomplete hypothetical to the VE.

**I.    The ALJ did not err at Step Three when he found Plaintiff's
impairments do not meet or equal a Listed impairment.**

As noted, the ALJ found at Step Three that Plaintiff's
impairments do not meet or equal the criteria for any Listed
Impairment set out in 20 C.F.R. part 404, subpart P, appendix 1.
Specifically, the ALJ found Plaintiff's impairments did not meet
Listing 1.02A which provides:

> 1.02 Major dysfunction of a joint(s) (due to any
> cause):  Characterized by gross anatomical
> deformity (*e.g.*, subluxation, contracture,
> bony or fibrous ankylosis, instability) and
> chronic joint pain and stiffness with signs
> of limitation of motion or other abnormal
> motion of the affected joint(s), and findings
> on appropriate medically acceptable imaging
> of joint space narrowing, bony destruction,
> or ankylosis of the affected joint(s). With:
>
> A.    Involvement of one major peripheral
> weight-bearing joint (*i.e.*, hip, knee, or
> ankle), resulting in inability to ambulate
> effectively, as defined in 1.00B2b.

"For a claimant to show that his impairment matches a
listing, it must meet all of the specified medical criteria.  An
impairment that manifests only some of those criteria, no matter
how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S.

12 - OPINION AND ORDER

521, 530 (1990).

> For example, under the "growth impairment"
> category of the child-disability listings, 20 CFR
> pt. 404, subpt. P, App. 1 (pt. B), § 100.00 *et
> seq.* (1989), there is a listing the medical
> criteria of which require the claimant to show
> both a "[f]all of greater than 25 percentiles in
> height which is sustained" and "[b]one age greater
> than two standard deviations . . . below the mean
> for chronological age." § 100.03.

> * * *

> [I]n the growth impairment listing described
> [above], a child claimant whose "bone age" was
> slightly less than two standard deviations below
> normal would not qualify under the listing, even
> if his height was much more than 25 percentiles
> below normal.

*Id.* at 530 n.7-8.

In addition, "[f]or a claimant to qualify for benefits by

showing that his unlisted impairment, or combination of

impairments, is 'equivalent' to a listed impairment, he must

present medical findings equal in severity to all the criteria

for the one most similar listed impairment." *Id.* at 531. "A

claimant cannot qualify for benefits under the 'equivalence' step

by showing that the overall functional impact of his unlisted

impairment or combination of impairments is as severe as that of

a listed impairment." *Id.*

> For example, if a child has both a growth
> impairment slightly less severe than required by
> listing § 100.03, and is mentally retarded but has
> an IQ just above the cut-off level set by
> § 112.04, he cannot qualify for benefits under the
> "equivalence" analysis-no matter how devastating
> the combined impact of mental retardation and

13 - OPINION AND ORDER

impaired physical growth.

*Id*. at 532 n.11.  "Thus, the listings in several ways are more restrictive than the statutory standard." *Id*. at 533.  The

> shortcomings of the listings are remedied at the
> final, vocational steps of the Secretary's test.
> A claimant who does not qualify for benefits under
> the listings, for any of the reasons described
> above, still has the opportunity to show that his
> impairment in fact prevents him from working.

*Id*. at 534 (citing 20 CFR §§ 416.920(e) and (f). *See also Bowen v. Yuckert*, 482 U.S. 137, 141 (1987)(if an adult claimant's "impairment is not one that is conclusively presumed to be disabling, the evaluation proceeds" to the fourth and fifth steps); *Heckler v. Campbell*, 461 U.S. 458, 460 (1983)("If a claimant suffers from a less severe impairment" than the listed impairments, "the Secretary must determine whether the claimant retains the ability to perform either his former work or some less demanding employment.").

Here the ALJ noted the medical expert testified at the January 29, 2007, hearing that a major peripheral joint does not include the foot.  The ALJ found the record does not reflect that Plaintiff's knee reconstruction was a limiting impairment.  For example, on July 10, 2000, Francisco Soldevilla, M.D., examining physician, reported Plaintiff had "problems" with his left knee, but found Plaintiff had full strength and symmetric reflexes on testing.  Tr. 431-32.  On October 5, 2000, Thomas R. Palmer, M.D., treating physician, opined Plaintiff was unable to work on

14 – OPINION AND ORDER

sloped surfaces due to the state of his "great toe" on his left foot rather than to any knee issues.  Tr. 433.  Similarly, on June 22, 2001, Charles Hickman, M.D., treating physician, reported Plaintiff had "numerous" problems, but did not include issues with Plaintiff's left knee.  Tr. 443-44.  The ALJ, therefore, concluded Plaintiff did not establish his impairments met "all of the specified medical criteria" required under Listing 1.02A because the record did not establish Plaintiff had dysfunction of a "major peripheral weight-bearing joint."

Based on the opinion of the medical expert and on the medical evidence, the ALJ concluded Plaintiff did not establish the presence of "medical findings equal in severity to all the criteria for the one most similar listed impairment" as described in *Sullivan.*

The Court concludes on this record that the ALJ did not err when he found at Step Three that Plaintiff's impairments do not meet or equal a Listed Impairment because the ALJ provided clear and convincing reasons supported by substantial evidence on the record for doing so.

**II.  The ALJ did not err when he evaluated Plaintiff's ability to perform his past relevant work based on how Plaintiff's past relevant work is "generally performed in the national economy."**

Plaintiff alleges the ALJ erred when he found Plaintiff was able to perform his past relevant work based on the ALJ's incorrect classification of that work.  Specifically, Plaintiff

15 - OPINION AND ORDER

contends the ALJ was required to determine whether Plaintiff could perform his past relevant work as Plaintiff actually performed his job rather than as the job is generally performed in the national economy.

SSR 82-61 provides a claimant will be found not disabled pursuant to 20 C.F.R. § 404.1520(e) when the ALJ determines a claimant "retains the RFC to perform either the actual functional demands and job duties of a particular past relevant job, or the functional demands and job duties of the occupation as generally required by employers throughout the national economy."  *See also Aramburo v. Astrue*, No. CV-07-3087-JPH, 2008 WL 2003320, at *8 (E.D. Wash. May 8, 2008).  SSR 82-62 provides:

> In finding that an individual has the capacity to perform a past relevant job, the determination or decision must contain among the findings the following specific findings of fact: (1) A finding of fact as to the individual's residual functional capacity (RFC); (2) A finding of fact as to the physical and mental demands of the past job/occupation; (3) A finding of fact that the individual's RFC would permit a return to his or her past job or occupation.

The Ninth Circuit has interpreted SSR 82-61 and the requirements at Step Four of the disability analysis as follows:

> Although the burden of proof lies with the claimant at step four, the ALJ still has a duty to make the requisite factual findings to support his conclusion.  This is done by looking at the residual functional capacity and the physical and mental demands of the claimant's past relevant work.  The claimant must be able to perform:
>
> 1. The actual functional demands and job duties of

> a particular past relevant job; *or*
>
> 2. The functional demands and job duties of the
> occupation as generally required by employers
> throughout the national economy.

*Pinto v. Massanari*, 249 F.3d 840, 844-45 (9th Cir. 2001)

(quotation omitted)(emphasis added).

At the February 8, 2001, hearing, the VE testified the

Dictionary of Occupational Titles (DOT) job description that best

matched Plaintiff's past relevant work as a community-college

instructor in the building trade was that of a vocational

instructor in the building trade, which was a "full range medium

to heavy on a national level."  Tr. 71.  In response to the ALJ's

hypothetical that included a claimant who was limited to lifting

10 pounds frequently and 20 pounds occasionally; who could not do

overhead work with his left arm or stand and walk for more than

30 minutes at a time or sit for more than 45 minutes at a time;

and who could not climb ropes, ladders, or scaffolds, the VE

testified the hypothetical claimant could not do Plaintiff's past

relevant work.  Tr. 72.  The VE did not specify whether her

analysis applied to Plaintiff's past relevant work as generally

performed in the national economy or as Plaintiff actually

performed it.

At the January 11, 2005, hearing, the VE testified the DOT

description that best matched Plaintiff's past relevant work was

instructor for vocational training with a light strength level.

Tr. 556.  The VE testified the way Plaintiff actually performed his job "may have exceeded that light exertional demand . . . at least . . . into the medium range."  Tr. 556.  In response to the ALJ's hypothetical involving a claimant who could not use ropes, ladders, or scaffolds; could occasionally stoop, crouch, or crawl; could not walk or stand on uneven surfaces; could sit for 45 minutes at a time and stand or walk for 30 minutes at a time; could not use his left arm for overhead work; could lift 10 pounds frequently and 20 pounds occasionally; and could not engage in work requiring hyperextension of the cervical spine, the VE testified such a claimant could perform Plaintiff's past relevant work as it is generally performed in the national economy.  Tr. 560.  The VE, however, testified, the hypothetical claimant could not perform Plaintiff's past relevant work as Plaintiff actually performed it.  Tr. 560.

The ALJ concluded in his March 15, 2007, decision that Plaintiff could perform his past relevant work as it is generally performed in the national economy.  As noted, Plaintiff contends the ALJ was required to determine whether Plaintiff could perform his past relevant work as the job was actually performed rather than as the job is generally performed in the national economy. The Ninth Circuit, however, has explained:

> We have never required explicit findings at step
> four regarding a claimant's past relevant work
> both as generally performed and as actually
> performed.  The vocational expert merely has to

find that a claimant can or cannot continue his or
her past relevant work as defined by [SSR 82-61].

*Pinto*, 249 F.3d at 245 (citing *Villa v. Heckler*, 797 F.2d 794,
798 (1986)("[t]he claimant has the burden of proving an inability
to return to his former type of work and not just to his former
job.")).  The ALJ, therefore, is not required at Step Four to
determine whether a claimant can do his past relevant work both
as actually performed and as it is generally performed in the
national economy.  The ALJ is required only to determine whether
a claimant can do his past relevant work either as he actually
performed it or as it is generally performed in the national
economy.

The Court, therefore, concludes the ALJ did not err when he
evaluated Plaintiff's ability to perform his past relevant work
based on how Plaintiff's past relevant work is generally
performed in the national economy.

**III. The ALJ did not err when he rejected in part Plaintiff's
      testimony.**

In *Cotton v. Bowen,* the Ninth Circuit established two
requirements for a claimant to present credible symptom
testimony:  The claimant must produce objective medical evidence
of an impairment or impairments, and he must show the impairment
or combination of impairments could reasonably be expected to
produce some degree of symptom.  *Cotton*, 799 F.2d 1403, 1407 (9th
Cir. 1986).  The claimant, however, need not produce objective

medical evidence of the actual symptoms or their severity.
*Smolen*, 80 F.3d at 1284.

If the claimant satisfies the above test and there is not any affirmative evidence of malingering, the ALJ can reject the claimant's pain testimony only if he provides clear and convincing reasons for doing so. *Parra v. Astrue,* 481 F.3d 742, 750 (9th Cir. 2007)(citing *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). General assertions that the claimant's testimony is not credible are insufficient. *Id*. The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester*, 81 F.3d at 834).

In the March 29, 2001, and April 13, 2006, decisions, the ALJs found Plaintiff produced objective medical evidence of the degenerative disc disease and "left foot status post fusion." The ALJs, however, found Plaintiff's testimony about the intensity and limiting effects of his symptoms on or before June 30, 2003, was not entirely credible. Because Plaintiff's date last insured was June 30, 2003, Plaintiff did not testify at the January 29, 2007, hearing. In his March 15, 2007, decision, the ALJ adopted the findings and analysis from the March 29, 2001, and April 13, 2006, decisions and rejected Plaintiff's previous testimony in part.

In the March 29, 2001, decision, the ALJ noted Plaintiff stated in his September 2, 1999, Activities of Daily Living

Report that he did his laundry, swept, and went for walks once a week; washed the windows, mopped, and went fishing once a month; and was active in Alcoholics Anonymous, social events, picnics, barbeques, and general outings. Tr. 23, 140-42. The ALJ also relied on the December 2, 1997, opinion of Ray N. Miller, M.D., treating physician, that Plaintiff could increase "the weight limit" he could lift up to 50 pounds in the next six months. Tr. 23, 299. In addition, the ALJ noted the September 4, 1999, report of Alan Amburn, Plaintiff's friend, in which he states Plaintiff is "still very active" mentally and socially and that Plaintiff leaves his home daily to look for work and to visit friends. Tr. 24, 145-54. The ALJ also noted the statement of Joseph Hunt, Plaintiff's son, in which he states Plaintiff can only hunt for a few hours; does not fish "nearly as often as he used to"; and needs his help on projects such as vehicle maintenance, roofing, and cutting firewood. Tr. 24, 165.

In the April 13, 2006, decision, the ALJ found Plaintiff to be not credible in part, particularly as to Plaintiff's testimony that he needs to take two naps per day. Tr. 463. Although Plaintiff alleges disability beginning March 1, 1997, Dr. Miller released Plaintiff to medium/heavy exertion work in 1998. Tr. 464. In addition, Dr. Hickman advised Plaintiff in August 1999 that he should not lift more than 25 pounds. Tr. 464. The ALJ noted Plaintiff did not have an incentive to work because he

retired in 2000 and is receiving $2,100 per month in disability retirement that would be eliminated if Plaintiff returned to work.  Tr. 464.

On this record, the Court finds the ALJ did not err when he found Plaintiff's testimony not entirely credible as to the intensity, persistence, and limiting effects of his impairments because the ALJ provided clear and convincing reasons supported by substantial evidence in the record for doing so.

## IV.  The ALJ did not err when he rejected the testimony of lay witnesses.

Lay testimony regarding a claimant's symptoms is competent evidence that the ALJ must consider unless he "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so."  *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).

Before the October 10, 2000, hearing, lay witnesses Alan Amburn, Joseph Hunt, and Ron and Lori Schlitt submitted written statements regarding Plaintiff's functional capacity.  In the March 29, 2001, decision, the ALJ rejected these statements in part.  Plaintiff did not submit further lay-witness statements or testimony before the later hearings.  In the  April 13, 2006, and March 15, 2007, decisions, the ALJ adopted the findings in the March 29, 2001, decision and rejected the lay-witness testimony. Plaintiff contends the ALJs improperly rejected the lay-witness testimony in those prior decisions.

22 - OPINION AND ORDER

In her February 2, 2004, Opinion and Order, Magistrate Judge Stewart concluded "it is unnecessary to resolve whether the lay testimony was properly discredited. . . .   Even if credited as true, the lay statements do not establish specific work-related impairments supporting a complete inability to work."  Tr. 490.  The Court agrees with the assessment of Magistrate Judge Stewart.

Accordingly, the Court concludes the ALJ did not err when he rejected the lay-witness testimony.

**V.    The ALJ's rejection of the opinions of Drs. Palmer and Hickman.**

Plaintiff contends the ALJ improperly rejected the opinions of Drs. Palmer and Hickman.

An ALJ may reject an examining or treating physician's opinion when it is inconsistent with the opinions of other treating or examining physicians if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record."  *Thomas*, 278 F.3d at 957 (quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).  When the medical opinion of an examining or treating physician is uncontroverted, however, the ALJ must give "clear and convincing reasons" for rejecting it.  *Thomas*, 278 F.3d at 957.  *See also Lester*, 81 F.3d at 830-32.

A nonexamining physician is one who neither examines nor treats the claimant.  *Lester*, 81 F.3d at 830.  "The opinion of a

nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Id.* at 831. When a nonexamining physician's opinion contradicts an examining physician's opinion and the ALJ gives greater weight to the nonexamining physician's opinion, the ALJ must articulate his reasons for doing so. *See, e.g., Morgan v. Comm'r of Soc. Sec. Admin*, 169 F.3d 595, 600-01 (9th Cir. 1999). A nonexamining physician's opinion can constitute substantial evidence if it is supported by other evidence in the record. *Id.* at 600.

## A.  Dr. Palmer's opinions.

Plaintiff contends the ALJ did not give any reason for rejecting Dr. Palmer's February 6, 2001, opinion that Plaintiff "continues to be permanently unable to work on sloped surfaces and will experience difficulty on ladders, roofs, and uneven surfaces and terrain" and Plaintiff's metatarsalgia symptoms "complicates any ability that he has to work on his feet" Tr. 708. Plaintiff also contends the ALJ did not give sufficient reasons for rejecting Dr. Palmer's April 9, 2001, opinion that Plaintiff "shouldn't have a job requiring him to be on his feet." Tr. 707.

The record reflects, however, Dr. Palmer opined in April 2002 that Plaintiff was only unable to work at "jobs requiring uneven terrain or ↑ standing/walking" and to "work on

24 - OPINION AND ORDER

sloped or uneven surfaces."  Tr. 704-05.

As noted, the ALJ included in his evaluation of Plaintiff's RFC that Plaintiff "should avoid walking or standing on uneven surfaces or climbing of any kind." Tr. 582.  The ALJ, therefore, properly gave greater weight to the later opinions of Dr. Palmer and included the limitations on walking or standing on uneven surfaces. *See Stone v. Heckler*, 761 F.2d 530, 532 (9th Cir. 1985)(a treating physician's most recent medical report is the most probative).  The Court, therefore, concludes the ALJ properly considered in his RFC assessment Plaintiff's limitations as Dr. Palmer described those limitations in his later treatment of Plaintiff.

Accordingly, the Court concludes the ALJ did not err when he failed to include Dr. Palmer's earlier assessments of Plaintiff's limitations.

**B.   Dr. Hickman's opinions.**

Plaintiff contends the ALJ improperly rejected the November 2002 and November 2004 opinions of Dr. Hickman regarding Plaintiff's limitations.

As a preliminary matter, the Court notes Dr. Hickman's 2004 opinion was reached after Plaintiff's June 30, 2003, date last insured.  Accordingly, Dr. Hickman's 2004 opinion is of limited value.

In November 2002, Dr. Hickman opined due to Plaintiff's

"degenerative disc disease of the cervical spine [and] chronic osteoarthritis of the left shoulder, bilateral knees and feet," Plaintiff was "no longer able to stand, have his arms over his head or do anything of the performance jobs that are necessary as far as being an instructor. . . . I feel even though he is 49 years old, his skeleton is 70 to 75. I find it hard to believe this patient could . . . be able to do active employment even with sedentary work." Tr. 452. Dr. Hickman further opined Plaintiff was not capable of sedentary work that involved lifting more than 10 pounds at a time and walking or standing two hours in an eight-hour day. Dr. Hickman also opined Plaintiff was also not capable of light work, which involves lifting 20 pounds occasionally and 10 pounds frequently as well as standing or walking for six hours in an eight-hour day.

In her February 2, 2004, Opinion and Order remanding this matter to the ALJ, Magistrate Judge Stewart noted Dr. Hickman's November 2002 report "indicates a drastic change in Dr. Hickman's assessment of Hunt's condition." Tr. 492. Accordingly, the Magistrate Judge directed the ALJ on remand to "determine whether this drastic change is attributable to a deterioration in Hunt's condition that rendered him disabled." Tr. 429.

On remand the ALJ rejected Dr. Hickman's November 2002 opinion because he found it was "inconsistent with his prior

26 - OPINION AND ORDER

letters and treatment record.  Prior statements from the same
doctor, which are contemporaneous with treatment, . . . allow
work."  Tr. 466.  The ALJ did not identify the specific
statements or medical records that contradicted Dr. Hickman's
November 2002 opinion.  Thus, ALJ did not provide "specific,
legitimate reasons . . . that are based on substantial evidence
in the record" for rejecting Dr. Hickman's November 2002 opinion.

        In addition, the ALJ did not make any findings on
remand as to whether Dr. Hickman's November 2002 opinion
reflected a deterioration in Plaintiff's condition.  The record
indicates Plaintiff suffered from degenerative disc disease.  As
the Ninth Circuit noted in *Stone,* "[b]ecause [the plaintiff's]
condition was progressively deteriorating, the most recent
medical report is the most probative."  761 F.2d at 532.  Dr.
Hickman's November 2002 opinion, therefore, is entitled to
greater weight than his earlier opinions.  In addition, the
record does not reflect Dr. Hickman's November 2002 opinion was
controverted by other opinions of either treating or examining
physicians during this period.

        The Court, therefore, concludes the ALJ erred when he
rejected Dr. Hickman's November 2002 opinion because the ALJ did
not provide clear and convincing reasons supported by the record
for doing so.  Based on this record, the Court credits
Dr. Hickman's November 2002 opinion.  The Court also credits

27 - OPINION AND ORDER

Dr. Hickman's November 2004 opinion to the extent it refers to
Plaintiff's medical condition as it existed during the relevant
period.

At the January 11, 2005, hearing, the VE testified the
job of community-college instructor as it is performed generally
in the national economy is a light occupation.  Crediting
Dr. Hickman's November 2002 and November 2004 opinions, the Court
finds Plaintiff is not capable of performing light work.

In light of Dr. Hickman's November 2002 and November
2004 opinions, the VE's testimony, and the record as a whole, the
Court finds Plaintiff does not have a sufficient RFC to sustain
work-related activities on a regular and continuing basis as
required by SSR 96-8p.  Accordingly, the Court concludes
Plaintiff is disabled.

**VI.  This matter should be remanded for payment of benefits.**

The decision whether to remand this case for further
proceedings or for the payment of benefits is a decision within
the discretion of the court and generally turns on the likely
utility of further proceedings.  *Harman v. Apfel*, 211 F.3d 1172,
1178-79 (9th Cir. 2000).

The court may "direct an award of benefits where the record
has been fully developed and where further administrative
proceedings would serve no useful purpose."  *Smolen*, 80 F.3d at
1292.

28 - OPINION AND ORDER

The Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate award of benefits directed." *Harman*, 211 F.3d at 1178. The court should grant an immediate award of benefits when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Id.* The second and third prongs of the test often merge into a single question: Whether the ALJ would have to award benefits if the case were remanded for further proceedings. *Id.* at 1178 n.2.

Here the Court finds the record is complete regarding Plaintiff's impairments. The Court credited Dr. Hickman's November 2002 opinion that Plaintiff was not able to perform light work. In addition, the Court notes this matter has been remanded twice and has been before the Commissioner three times. The Court, therefore, concludes further administrative proceedings would not serve any useful purpose in this matter.

### CONCLUSION

For these reasons, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of

29 - OPINION AND ORDER

42 U.S.C. § 405(g) for the calculation and award of benefits.

IT IS SO ORDERED.

DATED this 2nd day of June, 2008.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge